# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | | |
|---|---|---|
| **CORBIN BERNSEN** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **ACTION NO. 2:11CV546** |
| | : | |
| **INNOVATIVE LEGAL MARKETING, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM ORDER

The Plaintiff, Corbin Bernsen, filed this action to recover damages from Defendant, Innovative Legal Marketing, LLC ("ILM"), for breach of contract on a spokesperson agreement under which Bernsen would promote law firms licensing ILM's Big Case advertising campaign. ILM denies Bernsen's claims and counters that Bernsen breached the contract by doing things which reflected unfavorably on ILM, its clients, and Bernsen. The matter is before the Court to resolve Bernsen's motion to exclude ILM's expert witness. The matter is fully briefed and the parties appeared by counsel for a telephonic hearing on October 26, 2012. For the reasons stated during the hearing and set forth in detail below, the Court GRANTS Bernsen's motion.

Bernsen has moved to exclude Randy Dinzler as an expert. ILM designated Dinzler, who has worked as a contract employee for the company, to testify as to how Bernsen's course of actions negatively impacted his effectiveness as a spokesperson for ILM's Big Case Campaign, as well as other opinions. Dinzler's testimony will be based on his experience in legal marketing since 1995.

According to his disclosed expert report, Dinzler intends to offer general opinions about the use and impact of a spokesperson in an advertising campaign and how Bernsen's conduct impacted the Big Case Campaign. Originally, Dinzler was going to conduct focus groups to provide support for his testimony regarding the impact of Bernsen's conduct. However, since these focus groups have not been timely conducted, ILM concedes that Dinzler will not testify to any specific impact Bernsen's actions may have had on the Big Case Campaign.[1] Accordingly, Bernsen's motion to exclude Dinzler's testimony about how Bersen's conduct impacted the Big Case Campaign is GRANTED.

Although ILM concedes Dinzler lacks sufficient foundation to testify regarding the impact of Bernsen's conduct on the Big Case Campaign, the company asserts that Dinzler should still be permitted to testify to the general framework, and factors, by which marketing companies evaluate a spokerperson's conduct. Therefore, Dinzler now intends to offer the following challenged opinion as summarized from his expert report: Advertising campaigns use spokespersons to "evoke[] attitudinal and emotional reactions from the potential consumer[s]," and negative press coverage or events concerning the spokesperson "create an unfavorable impression in the minds of potential consumers regarding the spokesperson's product." (ECF No.72-1 at 3).

Bernsen contends that Dinzler is not sufficiently qualified to offer this opinion. In addition, he argues that Dinzler's testimony will not assist the jury in its fact-finding role, because a company's use of a spokesperson is not a complicated issue. Finally, he contends that

---

[1] Bersen, in his Reply, acknowledges that ILM did not address whether Dinzler would testify to the effect Bernsen's conduct "would likely have had" on "Bernsen's effectiveness as a spokesperson." (ECF No. 85 at 1). Bersen asserts that such testimony should be excluded for the same reasons that Dinzler's testimony about whether Bernsen's conduct did in fact impact the Big Case Campaign should be excluded. However, it appears to the Court, from ILM's reply brief and the record, that ILM does not intend for Dinzler to testify to any potential impact Bernsen's conduct may have had on the Big Case Campaign, and therefore, to the extent necessary Bernsen's motion is GRANTED in this regard.

Dinzler's testimony is unduly prejudicial under Federal Rule of Evidence 403, because it would unnecessarily confuse the jury. ILM counters that Dinzler's career in legal marketing, which has included presentations about television marketing he delivered to both students and industry groups, qualifies him by experience to make the proffered opinions. In addition, ILM suggests that Dinzler's testimony explaining the factors a marketing company, such as ILM, should consider in evaluating the conduct of a spokesperson will assist the jury in determining whether Bernsen's conduct constituted a material breach.

After reviewing the parties' arguments and Dinzler's report, the Court finds that the opinions cited above regarding the use of spokespersons in advertising campaigns and how negative press coverage of the spokesperson impacts consumers' attitudes towards the product are nothing more than Dinzler's explanation of common sense principles, and unlikely to assist the jury. Moreover, his training and experience make him no more qualified to assert the general impact spokespersons have on consumers than ILM's counsel or any other lay witness. Accordingly, for the reasons set forth below and stated on the record, the undersigned GRANTS Bersen's motion in limine to exclude Dinzler's opinion testimony.

## ANALYSIS

Rule 702 of the Federal Rules of Evidence guides District Courts in determining the admissibility of expert testimony.  United States v. Wilson, 484 F.3d 267, 274-75 (4th Cir. 2007).  The Rule provides:

> If scientific, technical or other specialized knowledge will assist the tryer of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702

When expert testimony is challenged, the District Court serves as a gatekeeper to assess whether the proffered evidence is reliable and relevant. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167 (1999). The gatekeeper function does not require that the Court "determine that the proffered expert testimony is irrefutable or certainly correct" because expert testimony is "subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." United States v. Moreland, 437 F.3d 424, 431 (4th Cir. 2006) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596, 113 S.Ct. 2786 (1993).

There is no "mechanistic test for determining the reliability of an expert's proffered testimony, rather 'the test of reliability is flexible and the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" Peters-Martin v. Navistar Int. Trans. Corp., 410 Fed. Appx. 612, 617 (4th Cir. 2011) (quoting United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (other citations omitted).

In this case, Dinzler's testimony is not strictly scientific in nature, but rather experiential. As the Fourth Circuit noted in Wilson, "experiential expert testimony . . . does not 'rely on anything like a scientific method.'" As a result, it is not characterized by falsifiability or refutability or testability like purely scientific testimony. Wilson, 484 F.3d at 274 (quoting Daubert, 509 U.S. at 593, 113 S.Ct. at 2786). Nevertheless, the Court must still require an experiential expert to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." Id. (quoting Fed. R. Evid. 702 Advisory Committee Note) (alterations in original).

**A. Dinzler's training and experience do not inform his proffered testimony that negative press coverage of the spokesperson unfavorably impacts consumers' perceptions of the product.**

This challenged opinion relates to Dinzler's view that negative press coverage or events concerning spokespersons generally subtly impacts consumers' opinions of the spokeperson's product. This opinion is allegedly undergirded by his belief that advertising campaigns use spokespersons to make an emotional and attitudinal connection with consumers. The basis for this testimony is Dinzler's experience in television production and marketing.

Dinzler does not have the education, training or experience necessary to inform these opinions. Dinzler has not explained any training or experience which permits him to infer how negative press coverage of the spokesperson impacts consumers' impressions of the product. Dinzler's experience is based on his roughly seventeen years in television and film production. However, he has no formal education in consumer behavior, and admits that he is not an expert in behavioral science, psychology, or sociology. (ECF No. 72-2 at 4-5). Rather, his experience relates to preparing video advertisements that appeal to consumers, not to understanding how a spokesperson's outside activities impact consumers. He has not shown that he has adequate training or experience to interpret, or forecast consumers' reactions to press coverage unrelated to the services being promoted. In addition, Dinzler's contract role as ILM's chief creative producer, suggests his general opinion testimony is unlikely to assist the fact finder in understanding a disputed issue. The question to be determined is whether Bernsen's conduct had the negative impact prohibited by the contract. Dinzler concedes he has no basis to testify about this disputed issue. The Court, therefore, finds that Dinzler's proffered opinions are not likely to

assist the fact finder and not supported by his education, training or experience. Accordingly, Dinzler may not testify generally about the use of a spokesperson in advertising campaigns nor to how negative press coverage of the spokesperson unfavorably impacts consumers' impressions of products generally.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 31, 2012

6